UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MYLAN INC. and
MYLAN PHARMACEUTICALS INC.,

             Plaintiffs,

    v.

SMITHKLINE BEECHAM CORPORATION
(n/k/a GLAXOSMITHKLINE LLC)
d/b/a GLAXOSMITHKLINE,
SMITHKLINE BEECHAM, P.L.C.
(n/k/a SMITHKLINE BEECHAM, LIMITED),
and SMITHKLINE BEECHAM (CORK)
LIMITED (successor to SB PHARMCO PUERTO
RICO, INC.),

             Defendants.

Civil Action No. 10-4809 (JAP)

**CLERK'S OPINION
GRANTING IN PART
AND DENYING IN PART
PLAINTIFFS' MOTION
TO TAX COSTS**

       This matter has come before the Clerk on the motion [Dkt. Entry 413] of Plaintiffs Mylan

Inc. and Mylan Pharmaceuticals Inc. (collectively, "Mylan" or "Plaintiffs") to tax costs against

Defendants GlaxoSmithKline LLC (formerly known as SmithKline Beecham Corporation), doing

business as GlaxoSmithKline, SmithKline Beecham, Limited (formerly known as SmithKline

Beecham, P.L.C.), and SmithKline Beecham (Cork) Limited (collectively, "GSK" or

"Defendants") pursuant to Federal Rule of Civil Procedure 54(d) and Local Civil Rule 54.1.

Defendants oppose this motion.

       The underlying action involved the Patent License and Settlement Agreement ("the

Agreement") which the parties signed after GSK dismissed its 2007 suit against Mylan, alleging

Mylan's infringement of GSK's patent for the drug Paxil CR.   In their complaint [Dkt. Entry 1],

filed in this case on September 20, 2010, and amended on September 12, 2011 [Dkt. Entry 166],

Mylan named Apotex Inc. and Apotex Corporation (collectively, "Apotex") as additional

defendants.   Plaintiffs alleged that GSK's exclusive supply of authorized generic Paxil products to Apotex violated the Agreement between GSK and Mylan.   Mylan's second amended complaint asserted claims of:   breach of contract by GSK; breach of the implied covenant of good faith and fair dealing by GSK; inducement to breach contract by Apotex; and tortious interference with a contract by Apotex.   [Dkt. Entry 166].

On February 23, 2012, the Court granted GSK's and Apotex's motions for summary judgment and dismissed Plaintiffs' complaint with prejudice.   [Dkt. Entry 227].

On appeal, on July 22, 2013, the Third Circuit reversed that part of the Court's February 23rd order granting GSK summary judgment on the breach of contract claim and remanded to this Court for trial on that claim.   [Dkt. Entry 236].   This Court's order was otherwise affirmed.

After both sides filed multiple motions *in limine* and to preclude experts reports [Dkt. Entries 338-50], a nine-day jury trial was held between March 13 and March 25, 2014.   [Dkt. Entries 357-58, 360-65, 367, 371].   The jury rendered a verdict in favor of Plaintiffs and against Defendants in the amount of $106.7 million.   [Dkt. Entry 371].   The verdict is reflected in the Court's judgment of April 1, 2014 [Dkt. Entry 389], which awarded Plaintiffs post-judgment interest, in addition to the $106.7 million.

The parties filed post-trial motions.   By order of July 16, 2014 [Dkt. Entry 408], the Court granted Plaintiffs' motion for a permanent injunction and an accounting by Defendants [Dkt. Entry 384], and granted in part and denied in part Plaintiffs' motion for pre-judgment interest [Dkt. Entry 394].   GSK's motion for judgment as a matter of law, new trial and/or remittitur [Dkt. Entry 399] was denied.

On August 8, 2014, Mylan filed their motion to tax costs [Dkt. Entry 413], here at hand.

On August 15, 2014, Defendants filed their notice of appeal to the Third Circuit [Dkt. Entry 414], appealing from both this Court's judgment and its order of July 16, 2014.   That appeal remains pending.

In furtherance of its July 16th order, on August 25, 2014, the Court granted Plaintiffs' request [Dkt. Entry 415] for pre-judgment interest in the amount of $247,869.00.   [Dkt. Entry 419].

Plaintiffs then filed a motion seeking the entry of an order awarding supplemental damages [Dkt. Entry 21], pursuant to the Court's prior accounting order.   That motion was resolved on January 22, 2015, by joint stipulation and order, awarding Mylan additional damages in the amount of $13,681,359.00.   [Dkt. Entry 428].   In this order, bringing the total judgment to $120,629,228, GSK continued to deny liability and Mylan's entitlement to damages, pending their previously-filed appeal.   On February 17, 2015, Defendants filed an additional notice of appeal from the July 16, 2014 order regarding post-trial relief and from this January 22 order.   [Dkt. Entry 430].

In the instant motion before the Clerk, Plaintiffs seek costs in the total amount of $157,445.40, consisting of:   fees of the clerk ($350.00); fees for printed and videotaped transcripts of court proceedings and depositions ($71,168.61); fees for printing trial exhibits, witness binders and deposition transcript designations ($15,420.56); witness fees ($16,628.06); and fees for exemplification and the cost of making copies, including that of trial technician services ($53,878.17).   [Dkt. Entry 413].

Defendants object to the amounts requested for transcripts, exemplification and copies, and assert that costs should be taxed in the total amount of $61,546.02 only.

3

## I.    <u>Legal Standards</u>

Taxable costs are allowed by Fed. R. Civ. P. 54(d) (1), which provides:   "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party."   A prevailing party is "one in whose favor a judgment is rendered, regardless of whether the party has recovered its entire claim or a portion thereof."   <u>Garonzik v. Whitman Diner</u>, 910 F. Supp. 167, 168 (D.N.J. 1995) (citing <u>Fahey v. Carty</u>, 102 F.R.D. 751 (D.N.J. 1983)).

There is such a strong presumption that costs should be awarded to the prevailing party that, "'[o]nly if the losing party can introduce evidence, and the district court can articulate reasons within the bounds of its equitable power, should costs be reduced or denied to the prevailing party.'"   <u>Reger v. Nemours Found., Inc.</u>, 599 F.3d 285, 288 (3d Cir. 2010) (quoting <u>In re Paoli R.R. Yard PCB Litig.</u>, 221 F.3d 449, 468 (3d Cir. 2000)).

Even so, taxable costs are "limited to relatively minor, incidental expenses," and are "modest in scope."   <u>Taniguchi v. Kan Pacific Saipan, Ltd.</u>, 132 S. Ct. 1997, 2006 (2012). Despite the "venerable presumption that prevailing parties are entitled to costs," <u>Marx v. Gen. Revenue Corp.</u>, 133 S. Ct. 1166, 1172 (2013), absent express statutory authorization, the clerk and district court may reimburse only those costs enumerated in 28 U.S.C. § 1920:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987). For that reason, even in the absence of opposition, the Clerk denies those costs not falling within the ambit of § 1920.

Furthermore, despite such presumption in its favor, the prevailing party must present sufficient information to carry its burden of showing that the costs sought fall within the limited scope of § 1920.   Romero v. CSX Transp., Inc., 270 F.R.D. 199, 201-02 (D.N.J. 2010).

In addition to Rule 54(d) and 28 U.S.C. § 1920, the Clerk's decision is guided by Local Civil Rule 54.1, which "establishes the general procedures to be followed in those cases where a party is entitled to recover costs" under § 1920.   Lite, N.J. Federal Practice Rules, Comment 2 to Rule 54.1 (Gann 2015 ed.) at 251.

Unquestionably, Plaintiffs are the prevailing parties, having obtained, through final judgment, the monetary and injunctive relief sought in their complaint.   Furthermore, their notice of motion and bill of costs [Dkt. Entry 413] were timely filed "within 30 days of the filing of an order dispositive of the last of any timely-filed post-trial motions, whether or not an appeal has been filed."   L. Civ. R. 54.1(a).   Plaintiffs have also complied with the verification requirement of 28 U.S.C. § 1924, mirrored in L. Civ. R. 54.1(b), by declaring, through their attorney's signature of the AO 133 form [Dkt. Entry 413], that the costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed.   Plaintiffs' counsel, Wade G. Perrin, Esq., also attests to same in his Affidavit ("Perrin Aff.") [Dkt. Entry 413-1], wherein he outlines the specific items of cost sought.   Finally, supporting invoices have been appended to Plaintiffs' motion, as required under L. Civ. R. 54.1(b).   Accordingly, the Clerk will now address the requested items, in the order in which they fall within § 1920.

## II.   Fees of the Clerk, § 1920 (1)

Mylan requests the $350 cost of filing their complaint as a § 1920 (1) fee of the

clerk.   Perrin Aff. ¶ 4.   The docket indicates that Plaintiffs paid this fee, required under 28 U.S.C.

§ 1914(a) for the filing of their complaint in 2010.   The Clerk consistently grants the filing fee

under § 1920 (1) and awards this **$350.00** cost, to which Defendants do not object.

## III.   Fees for Printed or Electronically Recorded Transcripts, § 1920 (2)

Under § 1920 (2), Mylan requests the cost of the transcripts of hearings ($15,716.51)

and of depositions ($55,452.10), or a total of $71,168.61.   Perrin Aff. ¶ 5.   Defendants object

to certain costs of both types of transcripts.   Defs.' Br. at 2-4, Exs. B, C.

### *Hearing Transcripts*

The hearing transcripts for which Plaintiffs request reimbursement relate to:   1/ the

September 25, 2013 in-person status conference ($200.00); 2/ the February 24, 2014 motion

hearing ($329.80); and 3/ the nine-day trial ($15,186.71).   [Dkt. Entry 413-2], Ex. A, Pt. 1.

Our relevant local rule, L. Civ. R. 54.1(g) (6), reads:

> The cost of a reporter's transcript is allowable only (A) when specifically
> requested by the Judge, master, or examiner, or (B) when it is of a statement
> by the Judge to be reduced to a formal order, or (C) if required for the record
> on appeal.   Mere acceptance by the Court of a submitted transcript does not
> constitute a request.   Copies of transcripts for an attorney's own use are not
> taxable in the absence of a prior order of the Court.   All other transcripts of
> hearings, pretrials and trials will be considered by the Clerk to be for the
> convenience of the attorney and not taxable as costs.

Under the standard of § 1920 (2), the Clerk may tax the cost of only those transcripts

which were "necessarily obtained for use in the case," such as for a purpose outlined in L. Civ.

R. 54.1(g) (6).   Those transcripts obtained for the convenience of counsel are non-taxable.

6

Defendants do not object, in principle, to the taxation of these hearing transcripts. However, they do oppose the inclusion of the costs of expedited service and Realtime.

*9/25/13 Status Conference:*   This conference addressed the Third Circuit's reversal of the Court's dismissal of the case and remand to this Court for trial on the breach of contract claim against GSK.   [Dkt. Entry 251].   It resulted in the Court's setting of dates for pre-trial motions, the list of exhibits and witnesses, and the trial.   [Dkt. Entry 252].

While GSK does not object to this $200 cost, the Clerk deems this transcript non-taxable as being merely for the convenience of counsel.   The cost of hearing transcripts has been denied where note-taking by counsel should have sufficed.   See e.g., Ash Grove Cement Co. v. Liberty Mutual Ins. Co., No. 3:09-cv-00239-HZ, 2014 WL 837389, at *16-17 (D.Or. Mar. 3, 2014) (denying costs of transcripts of scheduling conference and hearing on motion to compel as unnecessary when note-taking by counsel would have been sufficient).   Mylan has not shown the necessity of the transcript of this 35 minute hearing, for which the minutes indicate, "[t]he court will determine trial date and submit an appropriate notice." [Dkt. Entry 252].   If Plaintiffs had a real need for this transcript covering a few scheduling dates, they have not met their burden of enunciating it. The Clerk believes note-taking should have sufficed and denies this $200 cost.

*2/24/14 Motion Hearing:*   This hearing dealt with numerous *in limine* motions, motions to preclude expert reports and motions to seal by both sides.   [Dkt. Entry 337].   It resulted in the entry by the Court of thirteen orders.   [Dkt. Entries 338-350].   This hearing involved so many issues that it is not reasonable to expect counsel to have relied upon note-taking. Also, Mylan has demonstrated the necessity of this transcript by indicating that it was cited during the trial.   [Dkt. Entry 376 at 552:5-14; Dkt. Entry 378 at 1141:14-17].

Defendants do not object to reimbursing Plaintiffs for the cost of this 68 page transcript, but believe it should be taxed at $248.20 rather than $329.80, based upon the ordinary rate of $3.65 per page, not the expedited rate of $4.85 per page.   Defs.' Br., Ex. C.   While the Clerk might normally agree with GSK, he finds that due to the tight scheduling involved, it was necessary for Mylan to order an expedited transcript.   The Clerk can appreciate the usefulness of this transcript for the preparation of the trial, which occurred a mere three weeks after the hearing.   Accordingly, the Clerk grants this **$329.80** cost.

*Trial transcripts*

Mylan asks that the cost of the transcripts covering the nine-day trial be taxed in the amount of $15,186.71.   This total consists of 1,793 pages charged at:   the hourly rate of $4.22 per page for the original ($7,566.46); the rate of $1.20 per page for the copy ($2,151.60); and the rate of $3.05 per page for Realtime ($5,468.65).   Realtime technology allows the court reporter to instantly translate the spoken word into written form and send it to the attorney's computer for immediate access to the translation.

GSK counters that the 1,793 pages should be taxed at the ordinary rate of $3.65 per page for the original and $.90 per page for the copy, or a total of $8,158.15.   Defs.' Br., Ex. C. Defendants reiterate the argument that Mylan's request is over-inclusive, in seeking the cost of expedited service and realtime.   Defs.' Br. at 4.   In support, GSK cites prior opinions by the Clerk in which he deducted such costs in connection with deposition transcripts.   Id at 3.

When trial transcripts are at issue, however, the Clerk usually taxes the cost of expedited service where the need is shown.   For example, in the case of PPL Energy Plus, LLC v. Hanna, the Clerk found both that the trial transcripts were necessary and that the cost of expedited service

should be taxed, reasoning as follows:

> The Clerk rejects Defendants' position that Plaintiffs have failed to show the essential nature of the transcripts.   Plaintiffs point out several uses of the trial transcripts:   to address various issues that arose during the course of the trial; to prepare post-trial findings of fact and conclusions of law required by the Court; and to prepare their opposition to CPV's and the State Defendants' appeals to the Third Circuit.   Pls.' Br. at 5; Pls.' Reply at 3-4.   Furthermore, the transcripts were required on an expedited basis both because Plaintiffs' counsel cited to them in submissions to the Court during the trial [Dkt. Entries 253, 265] and because the proposed findings of fact and conclusions of law were due 15 days after trial completion [Dkt. Entry 272].   That being said, the Clerk finds that Plaintiffs have not justified, in addition to the hourly copies, the need for Realtime technology, which he views as a non-taxable convenience of counsel.

Civ. A. No. 11-745, 2014 U.S. Dist. LEXIS 178285, at *15 (D.N.J. Dec. 30, 2014).

Here, Mylan cites numerous instances in which both counsel referred to the transcripts during the course of the trial [Dkt. Entry 375, Tr. 334:19-335:4; Dkt. Enty 377, Tr. 789:23-791:7, Dkt. Entry 378, Tr. 1095:6-1098:2; Dkt. Entry 379, Tr. 1342:13-1343:4] and during their closings [Dkt. Entry 381, Tr. 1727:20-1728:17; Tr. 1760:6-12], as permitted by the Court [Dkt. Entry 380, Tr. 1407:21-25].   In fact, portions of the transcript were provided to the jury in answer to a question. [Dkt. Entry 381, Tr. 1787:1-1789:23].   Additionally, Plaintiffs cited the trial transcripts repeatedly in post-trial briefing supporting their motions for permanent injunction, accounting and prejudgment interest, and opposing Defendants' motion for judgment as a matter of law, new trial and/or remittitur.   [Dkt. Entries 390, 394-5, 396, 404].

While the Clerk finds that Mylan has justified the need for hourly transcripts, he cannot say the same regarding realtime, for which Plaintiffs have shown no independent need, in addition to the hourly transcripts.   Immediate access to the written word is an attorney convenience.   This $5,468.65 cost is deducted and trial transcripts are taxed in the amount of **$9,718.06**.

*Deposition Transcripts*

Also pursuant to § 1920 (2), Plaintiffs seek taxation of the cost of both printed transcripts and videotapes of 23 depositions, amounting to $55,452.10 in the aggregate.   Perrin Aff. ¶ 5.

GSK opposes $34,747.75 of this expense that is for "(1) expedited transcripts, (2) real-time transcription, (3) "rough" (i.e. draft) ASCII transcripts, (4) copying of exhibits, and (5) video services."   Defs.' Br. at 2-3.   These disputed charges are set forth in GSK's Exhibit A. Defendants also maintain that an additional $5,063.47 must be deducted from Mylan's requested total because seven of the depositions, i.e., those of Reed, Gaertner, Seagraves, Baxter, Kneuper, Booth and Statler, were neither "used at the trial," nor reasonably necessary at the time of their taking. Id. at 3-4.

Like those of hearing transcripts, the costs of deposition transcripts are taxable only to the extent that the transcripts were "necessarily obtained for use in the case," under § 1920 (2). Our L. Civ. R. 54.1(g) (7) provides that "[i]n taxing costs, the Clerk shall allow all or part of the fees and charges incurred in the taking and transcribing of depositions used at the trial under Fed. R. Civ. P. 32," and further, that "[f]ees and charges for the taking and transcribing of any other deposition shall not be taxed as costs unless the Court otherwise orders."

Despite the "used at the trial" requirement of our local rule, the Clerk applies the broader federal standard in § 1920 (2) of "necessarily obtained for use in the case."   This stance is based upon the Third Circuit's ruling that the Clerk has the authority to tax costs in a case terminated by summary judgment, despite the language of our local court rule, L. Civ. R. 54.1(g)(7).   In re Baby Food Antitrust Litig., 166 F.3d 112, 138 (3d Cir. 1999).   In the Baby Food case, the circuit court taxed costs even though the case did not reach the trial stage and remarked that a local court

10

rule which conflicts with a federal rule must yield to the federal rule.   Applying the "necessarily

obtained" standard of § 1920 (2), instead of the "used at the trial" standard of L. Civ. R. 54.1(g)(7),

the court taxed the cost of depositions used in deciding the summary judgment motion.

Furthermore, it is generally accepted that for the costs to be taxable, the depositions need

only to have "appear[ed] reasonably necessary to the parties in light of a particular situation

existing at the times they were taken.'"   See, e.g., Thabault v. Chait, Civ. A. No. 85-2441,

2009 WL 69332, at *7 (D.N.J. Jan 7, 2009) (quoting Datascope Corp. v. SMEC, Inc., Civ. A. No.

81-3948, 1988 WL 98523, at *3 (D.N.J. Sept. 15, 1988)); Smith v. Crown Equip. Corp., Civ. A.

No. 97-541, 2000 WL 62314, at *3 (E.D.Pa. Jan. 13, 2000).

Through an independent review of the docket, the Clerk has confirmed that all of the

deposition transcripts, in printed or electronically recorded format, were reasonably necessary,

even the seven specifically contested by Defendants.   Aside from those seven, all of the

deponents either testified live at the trial or their videotaped deposition was played at trial.

[Dkt. Entries 357-58, 360-65, 367].

As for the contested seven transcripts, six of the deponents, i.e., Reed, Gaertner, Seagraves,

Kneuper, Booth and Statler, were listed on the Final Pretrial Order as potential witnesses.   [Dkt.

Entry 293 at 13-17, 20-22].   Emblaze Ltd. v. Apple Inc., Case No. 5:11-cv-01079, 2015 WL

1304779, at *5 (N.D.Cal. Mar. 20, 2015) (taxing cost of deposition transcripts of 14 non-testifying

witnesses named on one or both of the parties' initial trial witness lists).   The printed transcript of

the final deponent, Craig Baxter, was cited in support of Mylan's motion *in limine* No. 12.   [Dkt.

Entry 296-4].   St. Jude Medical, S.C., Inc. v. Biosense Webster, Inc. , Civ. No. 12-621, 2015 WL

317362, at *2 (D.Minn. Jan. 26, 2015) (taxing cost of deposition transcript used to support

11

successful Daubert motion excluding expert testimony).   Therefore, the Clerk deems all the transcripts to have been necessarily obtained for use in the case.

   Even so, Plaintiffs' request cannot be granted in its entirety, as Mylan asks for the costs of most of the transcripts in both the videotaped and printed formats, as well as the costs of litigation support, expedited service, exhibits and shipping.   GSK correctly observes that certain deductions must be made for videotaping charges and for the cost of services not shown by Plaintiffs to have been necessary.

   Concerning printed transcripts, the Clerk ordinarily grants just the cost of the original and a certified copy of the transcripts, in addition to the reporter attendance fees.   Absent a showing of necessity, not made here, the costs of expedited service, litigation support services (such as realtime, rough ASCII, condensed transcript, e-transcript), shipping and handling, and exhibits are routinely denied.   New Jersey Mfrs. Ins. Group v. Electrolux, Inc., Civ. A. No. 10-1597, 2013 WL 5817161, at **6, 8 (D.N.J. Oct. 21, 2013); Warner Chilcott Labs. Ireland Ltd. v. Impax Labs., Inc., Civ. A. Nos. 08-6304, 09-2073, 09-1233, 2013 WL 1876441, at *6-7 (D.N.J. Apr. 18, 2013).

   As for videotaping costs, as a general matter, they may be encompassed within § 1920 (2), which provides for the cost of "electronically recorded transcripts necessarily obtained for use in the case."   However, the Clerk notes that when § 1920 (2) was amended in 2008 to include electronically recorded transcripts, the conjunction "or" was used, not "and."   Accordingly, the Clerk ordinarily will not tax the costs of both the printed and videotaped versions of the same transcript, absent a showing that both were necessarily obtained for use in the case. Warner Chilcott Labs. Ireland Ltd., 2013 WL 1876441, at *5 (citing Merck Sharp & Dohme

Pharm., SRL v. Teva Pharm. USA, Inc., Civ. A. No. 07-1596, 2010 WL 1381413, at *3 (D.N.J. Mar. 31, 2010)). Necessity for use in the case goes beyond the convenience of the party or duplication.  Id. citing Cherry v. Champion Int'l Corp., 186 F.3d 442, 449 (4th Cir. 1999).

In a case in point, Garonzik v. Whitman Diner, supra, the prevailing party requested several fees in connection with the deposition of an expert witness who testified by videotape at the trials, i.e., that of videotaping, of playing the videotape at trial, of the transcription of the videotape, and of a copy of the videotape.  910 F. Supp. at 170-72.   Applying the pre-amendment version of § 1920 (2), this Court taxed the costs of the preparation and playback of the videotaped deposition because the videotape was "reasonably necessary to the litigation."  Id. at 171. The Court also allowed the cost of the transcription, reasoning that the printed transcript was necessarily obtained for use in the case, in addition to the videotape, because of the obligations placed on litigants under our judicial code.   Under Fed. R. Civ. P. 26(a)(3) and 32(c), a party who offers deposition testimony in non-stenographic form must provide a transcript to the other parties and the court.  Id. at 171-72.   Therefore, the printed transcript is a necessity and not a mere convenience.   However, the final cost, that of the copy of the videotape, was denied because the movant failed to show that it was reasonably necessary to the trial.   Id. at 172.

In a subsequent decision applying the Garonzik ruling, this Court affirmed the Clerk's granting of the cost of deposition transcripts only in the printed format, and not the videotaped format.  Pharm. Res., Inc. v. Roxane Labs., Inc., Civ. A. No. 03-3357, 2008 WL 2951173, at *5 (D.N.J. July 25, 2008).   In the Pharmaceutical Resources case, the Court determined that only the stenographic deposition transcripts were necessary, as distinguished from the Garonzik case: "The videotapes were not displayed to the court during the proceeding and were not used in the

13

determination of the summary judgment motion or for any other purpose.   Their necessity for additional use has not been established."   Id.

Based upon this case law, the Clerk allows videotaping charges, with deductions explained below, of only those videotapes played at the trial, i.e., the Grady, Gettenberg, Daniels, Mauro, Rea, Lydeamore, and Workman videotapes.   However, no invoices have been submitted for the Workman videotapes and therefore, only the cost of the printed transcripts of those depositions will be taxed.

In connection with those videotapes actually played during the trial, Mylan's attached invoices contain the following descriptions and service charges :"Videosynch/Tape," at $100 each; "Videographer – 1st 2 hours," at $295 or $325; "Videographer – Each additional hour," at $85/hr. or $105/hr.; "Video Archiving," at $20; and "Video DVT," or "In-House Video Synchronization," at $35/hr.

Video synchronization, requested here under § 1920 (2), is a service which times the videotape to the lines of the transcript and facilitates the editing of the videotape.   In this post-Taniguchi era, the Clerk agrees with that line of cases which finds such costs non-taxable as being outside the bounds of § 1920.   As the Ninth Circuit has stated, in analyzing video synchronization more appropriately under § 1920 (4), "synchronizing deposition videotapes with their transcripts, while convenient, [is] not an act of copying or exemplification and [is] not truly *necessary* for trial."   Kalitta Air L.L.C. v. Central Texas Airborne Sys. Inc., 741 F.3d 955, 959 (9th Cir. 2013) (emphasis in original).   The circuit court explained more generally, "[t]he costs of transcript and deposition synchronization do not fit squarely within the costs statute, and we, like the Supreme Court, 'see no compelling reason to stretch the ordinary meaning of the cost

14

items Congress authorized in § 1920.'"   Id. (quoting Taniguchi, 132 S.Ct. at 2006).   For this

reason, the Clerk denies the synchronization/video DVT costs as well as the unexplained video

archiving fees, which find no place in the § 1920 scheme.

With the foregoing in mind, the Clerk allows the costs of the original plus one copy or a

certified copy of all of the printed transcripts and associated reporter attendance fees, as well as

the videotape and videographer charges of the Grady, Gettenberg, Daniels, Mauro, Rea, and

Lydeamore depositions.   The following costs, which appear in Mylan's Exhibit A, Parts 1 and 2

[Dkt. Entries 413-2, 413-3], are taxed:

| **Deponent** | **Taxed Amount** |
|---|---|
| **Kevin Grady** | |
| Videotapes | $    400.00 |
| Certified transcript | $    451.75 |
| | |
| **Kathleen Bradish** | |
| Original & One | $    767.00 |
| | |
| **Ellen Gettenberg** | |
| Original & One | $    841.50 |
| Reporter appearance | $    370.00 |
| Videographer | $    797.50 |
| Videotapes | $    400.00 |
| | |
| **Jennifer Daniels** | |
| Original & One | $    631.40 |
| Videographer | $    380.00 |
| | |
| **Anthony Mauro** | |
| Certified transcript | $    812.50 |
| Videotapes | $    300.00 |
| | |
| **Harry Korman** | |
| Certified transcript | $ 1,163.50 |
| | |
| **Hope D'Oyley-Gay** | |
| Original & One | $    504.90 |

| **Deponent** | **Taxed Amount** |
|---|---|
| **David Rea** | |
| Original & One | $   869.40 |
| Videographer | $   507.50 |
| | |
| **Steven Lydeamore** | |
| Certified transcript | $   930.00 |
| | |
| **Michael Gaertner** | |
| Original & One | $   315.25 |
| | |
| **Robert Siek** | |
| Original & One | $ 1,036.60 |
| | |
| **George Carey** | |
| Original & One | $   672.60 |
| Saturday appearance fee | $   247.50 |
| | |
| **Meredith Seagraves** | |
| Original & One | $   976.25 |
| | |
| **Craig Baxter** | |
| Original & One | $ 1,375.00 |
| Reporter appearance | $   350.00 |
| | |
| **Jill Ondos** | |
| Certified transcript | $   968.50 |
| | |
| **Benjamin Maizel** | |
| Certified transcript | $ 1,105.00 |
| | |
| **Carla Mulhern** | |
| Original & One | $   997.10 |
| Late night appearance fee | $    27.50 |
| | |
| **Robert Kneuper** | |
| Original & One | $ 1,038.40 |
| Appearance fee after hour | $    55.00 |
| | |
| **David L. Workman, II** | |
| Certified transcript | $   458.25 |

| **Deponent** | | **Taxed Amount** |
|---|---|---|
| **Julie A. Booth/Lisa Jo Statler** | | |
| Certified transcript | $ | 611.00 |
| Early AM pages | $ | 25.00 |
| | | |
| **David L. Workman, II** | | |
| Certified transcript | $ | 806.00 |
| | | |
| **Carla Mulhern** | | |
| Original & One | $ | 737.50 |
| | | |
| **Total:** | | **$21,929.40** |

Combining the granted costs of deposition ($21,929.40), hearing ($329.80) and trial ($9,718.06) transcripts, transcript costs are taxed in the total amount of **31,977.26** pursuant to § 1920 (2).

### IV.    Witness Fees, § 1920 (3)

Pursuant to § 1920 (3), Mylan requests $16,628.06 for the attendance of fifteen witnesses at depositions ($5,491.40) and five witnesses at trial ($11,136.66).   These fees include the $40 per diem statutory attendance fee, subsistence (lodging and meals), and transportation fees. Perrin Aff. ¶ 7.   While Defendants do not object to this cost, the Clerk grants only those fees statutorily permitted and substantiated by receipts.   .

Local Civil Rule 54.1(g) incorporates by reference 28 U.S.C. § 1821, which controls allowable witness fees:

> (1) The fees of witnesses for actual and proper attendance shall be allowed, whether such attendance was voluntary or procured by subpoena. The rates for witness fees, mileage and subsistence are fixed by statute (see 28 U.S.C. § 1821).   Witness fees and subsistence are taxable only for the reasonable period during which the witness was within the District.   Subsistence to the witness under 28 U.S.C. § 1821 is allowable if the distance from the courthouse to the residence of the witness is such that mileage fees would be greater than

subsistence fees if the witness were to return to his or her residence from day to day.

L. Civ. R. 54.1(g) (1).

Section 1821 of Title 28 provides for the payment of witnesses' fees and allowances for their attendance in federal court.   28 U.S.C. § 1821(a) (1).   Subsection (b) therein allows a $40 per day attendance fee "for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance."   Subsection (c) provides for the actual expenses of the most economical common carrier that is reasonably available, traveling the shortest practical route, as well as "[a]ll normal travel expenses within and outside the judicial district," including parking fees and tolls. Subsection (d) allows a subsistence fee for a required overnight stay, provided that the per diem rate does not exceed the allowance established by the GSA, pursuant to 5 U.S.C. § 5702(a), in the area of attendance.   The applicable lodging tax is also reimbursable pursuant to Federal Travel Regulation § 301-11.27.   Frequently Asked Questions, Per Diem, U.S. General Services Administration, http://www.gsa.gov./portal/content/104208 (last reviewed Oct. 23, 2014). The applicable GSA per diem rates for the Trenton area, during the trial in March 2014, are: $124 for lodging, plus 7% tax, or $132.68 per night; and $61 for meals and incidental expenses, except for the first and last day of travel, for which the meal allowance is $45.75. http://www.gsa.gov/perdiem.

L. Civ. R. 54.1(g) (7) further provides in pertinent part, "Fees for the witness at the taking of a deposition are taxable at the same rate as for attendance at trial.(See L. Civ. R. 54.1(g )(1).)" The GSA rates for the depositions vary and are addressed below.

*Deposition Witnesses*

For the following twelve deposed witnesses, Plaintiffs seek reimbursement for just the $40 per diem attendance fee: Kevin Grady, Brian Roman, Anthony Mauro, Harry Korman, Chris Benson, Bob Potter, Tom Parker, Stuart Williams, Jill Ondos, Julie Booth, Lisa Statler and James Reed.   Perrin Aff. ¶ 7.   While Mylan provides no proof that Brian Roman, Chris Benson and Stuart Williams were deposed, and the Clerk finds no mention of them in the Final Pretrial Order, he accepts the representation of Plaintiffs' counsel that they were deposed.   Therefore, $480 ($40 x 12) is taxed for these witness fees.

The remaining three deponents, Benjamin Maizel, Mark Gleason and David Workman, incurred additional costs as they traveled a distance for their depositions.   For these witnesses, the Clerk grants the cost of:   $40 attendance for each deposition day and two travel days; lodging at the GSA rate, where requested; meals for the deposition day and two travel days, at the GSA rates; and substantiated travel costs.
.

Benjamin Maizel traveled from Tampa, FL to sit for his deposition in New York City on September 21, 2011.   He incurred attendance, meal and travel costs, but no lodging expenses. Plaintiffs use the correct GSA rates of $71 for meals and $53.25 for travel day meals, and substantiate the requested fees for airfare, cabs and airport parking with receipts.   [Dkt. Entry 413-1, Ex. C].   The requested fees of $120 ($40 x 3 days) attendance, $177.50 ($71 + 2 x $53.25) for meals, and $639 for travel, or a total of $972.00, is granted.

Mark Gleason flew into LaGuardia Airport from Pittsburg, PA for his October 4, 2011 deposition in New York City.   Mylan cites the correct GSA meal rates ($71 and $53.25 for travel days) and lodging rate ($295/night + 8.875% tax) and substantiates all travel costs, except for the

requested $45 cost of the taxicab to the airport, which is denied. Even if all requested fees were granted, the total of $1,330.10 listed by Mylan is incorrect. The Clerk taxes:   $120 ($40 x 3 days) attendance, $642.36 ($590 + 8.875% x $590) lodging for two nights, $177.50 ($71 + 2 x $53.25) for meals and $320.80 in travel costs.   These total $1,260.66.

The final deposition witness, David Workman, made two separate trips to New York City from Pittsburg to sit for two depositions in January 2014.   Relevant GSA rates are $191/night + 8.875% lodging tax, $71 for meals and $53.25 for travel day meals.   Mr. Workman flew into LaGuardia Airport on January 13th and returned to Pittsburg the following day, the day of his deposition.   Taxed costs for this January 14, 2014 deposition are: $80 ($40 x 2 days) attendance, $207.95 ($191 + 8.875% x $191) lodging for one night, $124.25 ($53.25 + $71) for meals, and $976.90 in travel costs, or a total of $1,389.10.

Mr. Workman's second trip, from January 26-28, 2014, results in taxed costs of: $120 ($40 x 3) attendance, $415.90 ($382 + 8.875% x $382) lodging for two nights, $177.50 ($71 + 2 x $53.25) for meals and $604.54 in travel costs, or a total of $1,317.94.   Combining this total with the previous one of $1,389.10, taxed costs for this deposition witness amount to $2,707.04.

Fees for deposition witnesses are granted in the amount of **$4,939.70** ($480 + $972 + $1,260.66 + $2,707.04).

### *Trial Witnesses*

The $11,136.66 fees claimed by Mylan for trial witnesses are those of Harry Korman, Thomas Parker, Ben Maizel, David Workman and Mark Gleason.   Perrin Aff. ¶ 7.   Again, even in the absence of opposition by Defendants, the Clerk grants just those fees for which

Mylan has satisfied its initial burden of showing its statutory entitlement.   Of note in this category is Plaintiffs' failure to even attempt to justify trial attendance beyond the days dedicated to these witnesses' testimony at trial and travel to and from court.   Most particularly, with regard to Mark Gleason, their damages expert who testified on just two days, Mylan seeks fees for 12 days of attendance.

The term "attendance" in § 1821 means "necessary attendance."   Hurtado v. United States, 410 U.S. 578, 583-87 (1973).   A witness is in necessary attendance in court when he is ready and available to testify.   Id. at 584.   Witness fees may be granted for those days on which the witness attended the trial before actually testifying, but only if the witness was holding himself available to testify.   Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 335 (5th Cir. 1995) (citing Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, Inc., 729 F.2d 1530, 1552-53 (5th Cir. 1984)).

In a case in point, Pan Am. Grain Mfg. Co. v. Puerto Rico Ports Auth., the prevailing party sought $120 for three days of attendance fees, even though the witness testified on only two days.   193 F.R.D. 26 (D.P.R. 2000), aff'd, 295 F.3d 108 (1st Cir. 2002).   The movant tried to justify the fees by stating that the witness was "available for consultation during the three days." Id. at 36.   The court rejected the movant's argument, explaining that "[a]ttendance for the purpose of consultation is not necessary attendance within the meaning of 28 U.S.C. § 1821(b)."   Id. Likewise, the court reduced the requested $360 witness fee for another witness who attended trial on nine days, but testified on only one day and made himself available for consultation on the other eight days.   The court reiterated, "statutory attendance fees exist to compensate witnesses for their attendance at trial, not to compensate experts for their advice."   Id.   For both witnesses,

the court granted the $40 per diem fee only for those days on which the witnesses testified and traveled to and from the courthouse.

Mylan does not explain the necessity of attendance of the trial witnesses, beyond the days on which they actually testified. Therefore, with the foregoing case law in mind, the Clerk limits fees to those days on which the witnesses actually testified at trial [Dkt. Entries 358, 360-63] plus the days that these witnesses spent traveling between Pittsburg, PA or Tampa, FL and the Trenton courthouse, as allowed under § 1821 (b).   The relevant GSA rates, mentioned above, are applied and pro rata reductions are made where appropriate.

Harry Korman testified on March 14, 2014 and fees will be taxed for three days, rather than the requested four, as follows:   $120 ($40 x 3 days) attendance; $265.36 ($132.68 x 2) for two nights' lodging; $152.50 ($61 + 2 x $45.75) for meals; and $852.21 for travel ($562.79 airfare + 75% of airport parking, or $108, + $181.42 for car from courthouse). These total $1,390.07.

Thomas Parker testified on March 17 and 18, 2014 and fees will be taxed for four days, rather than the requested five:   $160 ($40 x 4 days) attendance; $398.04 ($132.68 x 3) for three nights' lodging; and $213.50 ($61 x 2 + $45.75 x 2) for meals.   The requested travel cost of $234.84 is denied as no receipts have been provided.   These total $771.54.

Ben Maizel testified on March 18 and 19, 2014 and fees will be taxed for four days, rather than the requested eight, as follows:   $160 ($40 x 4 days) attendance; $398.04 ($132.68 x 3) for three nights' lodging; $213.50 ($61 x 2 + $45.75 x 2) for meals; and $742.80 for travel ($13.80 for cab + $14.00 for 2 days' of courthouse parking + $433 airfare + $45 for 50% of requested fuel + $237 for 50% of requested car rental).   These total $1,514.34.

David Workman testified on March 19, 2014 and fees will be taxed for three days, rather than the requested five:   $120 ($40 x 3 days) attendance; $265.36 ($132.68 x 2) for two nights' lodging; $152.50 ($61 + 2 x $45.75) for meals; and $993.22 for travel ($520.12 airfare + $192.80 and $208.30 for cabs + $72 for 75% of requested four days of airport parking).   These total $1,531.08.

Finally, Mark Gleason testified on March 19 and 20, 2014 and fees will be taxed for 4 days, rather than the requested 12, as follows: $160 ($40 x 4 days) attendance; $398.04 ($132.68 x 3) for three nights' lodging; $213.50 ($61 x 2 + $45.75 x 2) for meals; and $362.74 for travel ($20 for two car rental service fees + $26.57 x 2 for fuel, coming and going + $111.55 x 2 for car rental, coming and going + $33.25 x 2 for tolls, coming and going).   The $7 cost of courthouse parking is denied as it was incurred on March 25, well after Mr. Gleason's testimony.   Also, even though no receipt has been provided for tolls during the witness' drive from Pittsburg to Princeton, the Clerk can extrapolate from the receipt for the return trip.   The same doubling calculation was done for the fuel and car rental, as the receipts provided covered an excessive number of days.   These fees total $1,134.28.

Combined, trial witness fees amount to **$6,341.31** ($1,390.07 + $771.54 + $1,514.34 + $1,531.08 + $1,134.28).

Pursuant to § 1920 (3), deposition ($4,939.70) and trial witness fees ($6,341.31) are taxed in the total amount of **$11,281.01**.

### V.      <u>Exemplification and Cost of Making Copies, § 1920 (4)</u>

In this final category, § 1920 (4), Mylan seeks the cost of: 1) "printing charges incurred to produce trial exhibits, witness binders, and deposition transcript designations in preparation for

trial," in the amount of $15,420.56, Perrin Aff. ¶ 6; 2) the "Printing of Demonstratives," in the amount of $4,900.17, Perrin Aff. ¶ 8; 3) the "Preparation of Demonstratives, Slides, and Video Depositions," in the amount of $34,263.00, id.; and 4) "Trial Technician Services," in the amount of $14,715.00, id.

While Plaintiffs categorize the first cost as that of printing, pursuant to § 1920 (3), the Clerk views that photocopying charge as the "cost[s] of making copies," within the meaning of subsection (4) of § 1920.   Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158, 166 (3d Cir. 2012) ("Indeed, since the advent of photocopying technology, the allowance for fees for 'copies' under § 1920(4) has been relied upon by prevailing parties to recover photocopying costs.")   Defendants do not object to taxing that $15,420.56 cost.

In the Clerk's view, the costs in the other three categories fall under the separate prong of § 1920 (4), i.e., "fees for exemplification."   Defendants do not oppose taxing the second category, the $4,900.17 cost of preparing exhibits, but strongly oppose the remaining $48,978 in fees for exemplification, set forth in the third and fourth categories.   Defs.' Br. at 1-2.

### Costs of Making Copies

The costs of making copies are taxable to the extent that the copies were "necessarily obtained for use in the case."   28 U.S.C. § 1920 (4).   The test of subsection (4) is satisfied if the copies were required to be filed with the court or provided to opposing counsel.   Copies may have been necessarily obtained under other circumstances as well, such as to prepare one's defense in the case.   Conversely, general copying costs are not recoverable and neither are the costs of copies obtained merely for the convenience of counsel.   As the prevailing party knows the purpose of its copies, it must demonstrate that the copies were necessarily obtained for a

24

reimbursable use in the case.   See, e.g., Awwad v. Largo Medical Center, Inc., No. 8:11-cv-1638-T-24 TBM, 2013 WL 6198856, at *5 (S.D. Fla. Nov. 27, 2013) (stating generally accepted principles governing the taxation of the cost of copies).

Mylan's counsel explains that a charge of $15,420.56, evidenced by the invoice of Transperfect Legal Solutions [Dkt. Entry 413-4], Ex. B, was incurred to produce trials exhibits, witness binders, and deposition transcript designations in preparation for trial. Perrin Aff. ¶ 6. The Clerk accepts counsel's characterization of this uncontested charge and finds these copies necessary for use at trial.   However, only the costs of the color copies ($4,848.80) and the black and white copies ($6,744.32), charged at the reasonable rates of $.55 and .08 per page, respectively, are taxable.   The costs of the 4" ring binders ($1,040.00), coil binding ($105.00), custom labels ($392.40), file folders ($234.75), redwelds ($177.00) and tabs ($621.25), which are in the nature of attorney overhead, are not taxable.   Yong Fang Lin v. Tsuru of Bernards, LLC, Civ. A. No. 10-2400, 2011 WL 2680577, at *5 (D.N.J. July 8, 2011); Laura P. v. Haverford School Dist., Civ. A. No. 07-5395, 2009 WL 1651286, at *9 n.10 (E.D.Pa. June 12, 2009); Close-Up Int'l, Inc. v. Berov, Civ. A. No. 02-CV-2363, 2007 WL 4053682, at *11 (E.D.N.Y. Nov. 13, 2007). These copies are taxed in the amount of **$11,593.12**.

### *Fees for Exemplification*

The final costs sought by Mylan for demonstratives and trial technician services are taxable, if at all, as § 1920 (4) "fees for exemplification."   The Third Circuit has not defined the parameters of "fees for exemplification."   However, that court narrowly interpreted the "costs of making copies" in its highly regarded Race Tires decision, which is widely considered to be the most restrictive in the country on that issue. 674 F.3d at 158 (limiting the taxation of

the costs of electronic discovery to those of scanning hard copies, converting native files to

agreed-upon format, and transferring VHS tapes to DVD); Akanthos Capital Management, LLC

v. Compucredit Holdings Corp., No. 1:10-cv-844-TCB, 2014 WL 896743, at *10 (N.D.Ga.

Mar. 7, 2014) ("the Court searched high and low for a case that contravenes Race Tires. It found

but two," which relied on the Ninth Circuit Taniguchi decision, later vacated by the Supreme

Court).

Two months after the issuance of the Race Tires opinion, the United States Supreme Court

reaffirmed the very limited scope of taxable costs under § 1920 when it determined that subsection

(6) "compensation of interpreters" covers only oral, not document translation.  Taniguchi, 132 S.

Ct. at 1997, 2006 ("the 'discretion granted by Rule 54(d) is not a power to evade' the specific

categories of costs set forth by Congress. Crawford Fitting, 482 U.S., at 442, 107 S.Ct. 2494.

'Rather,' we have said, 'it is solely a power to decline to tax, as costs, the items enumerated in

§ 1920.' Ibid.").   The Court commented therein that "[t]axable costs are a fraction of the

nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators."   Id.

Against that backdrop, in a prior taxation motion filed by these Plaintiffs, the Clerk

restricted taxable "fees for exemplification" to the costs of physically preparing demonstratives,

to the exclusion of the cost of intellectual efforts.   Warner Chilcott Labs. Ireland Ltd., 2013 WL

1876441, at **13-17.   See also, Warner Chilcott Labs. Ireland Ltd. v. Impax Labs., Inc., Civ.

A. Nos. 08-6304, 09-2073, 09-1233, 2013 WL 1716468, at *11-13 (D.N.J. Apr. 18, 2013)

(applying the same analysis in ruling on Impax's taxation motion).   In his rather lengthy analyses,

the Clerk followed the lead of the Ninth Circuit in Romero v. City of Pomona, 883 F.2d 1418

(9th Cir. 1989), overruled in part on other grounds by Townsend v. Homan Consulting Corp.,

929 F.2d 1358, 1363 (9th Cir. 1991) (en banc), a decision cited with approval by the Race Tires

court.   Heeding the warning of the Taniguchi and Race Tires courts, the Clerk also denied the

costs of a graphic design consultant, 2013 WL 1876441, at *17 and trial technician, 2013 WL

1716468, at *12-13, on the ground that the services provided were akin to non-taxable expert

fees.   See also the Clerk's June 6, 2014 decision in Cordis Corp. v. Abbott Labs., Civ. A. Nos.

07-2265, 07-2477, 07-2728, 07-5636 [Dkt. Entry 162 in 07-2265] (discussing post-Race Tires

decisions of the Fourth and Federal Circuits and denying costs of technician's services, among

others).

        More recently, a court within the Ninth Circuit set narrow limits on the taxation of

exemplification, after discussing the Supreme Court's Taniguchi holding and the Ninth Circuit's

decision, cited above herein, in Kalitta Air L.L.C., 741 F.3d at 959, denying the costs of video

synchronization.   In Fowler v. California Highway Patrol, the court held that the costs of "Video

Clip Editing from Synchronized Video" and "Video Editing—Non Linear," as well as the costs of

in-court technical support and equipment rental fees, were non-taxable. Case No. 13-cv-0102-

TEH, 2014 WL 3965027 (N.D.Cal. Aug. 13, 2014).   That court concluded, "[i]n light of recent

Supreme Court and Ninth Circuit guidance, and the proper, narrow construction of § 1920,

the Court finds that Defendants' in-court technical support and equipment rental fees are not

properly taxed as costs because they are not, by their own terms, acts of copying or

exemplification."   Id. at *4.

        During the past year, another court within the Third Circuit denied the costs of courtroom

support, reasoning that "'[c]ourtroom support' is the type of activity typically performed by

paralegals or support staff employed at a law firm, and is therefore akin to attorneys fees, which

are not recoverable as costs." Honeywell Int'l Inc. v. Nokia Corp., C.A. No. 04-1337-LPS, 2014 WL 2568041, at *11 (D.Del. May 30, 2014). The court also denied the cost of equipment rental on the ground that the movant failed to show that the court's equipment was unavailable or inadequate. Id.

Here, the contested $48,978 cost of the "Preparation of Demonstratives, Slides, and Video Depositions" and "Trial Technician Services," Perrin Aff. ¶ 8, which Mylan seeks to recoup, consists entirely of the $270/hr. charges of Garret Malter, the trial presentation analyst at Alston & Byrd, Plaintiffs' New York counsel. [Dkt. Entry 413-6], Ex. D at 4-8. Mr. Malter's services invoiced at $34,263 included "digital preparation of demonstratives, PowerPoint presentations, and video deposition clips," and "creation and maintenance of a TrialDirector database of electronic files to be displayed at trial." Perrrin Aff. ¶ 8. The invoice descriptions of the 54.5 hours of trial technician services, charged at $14,715, consist merely of: "in courtroom during voir dire to be available for opening statements," and "provide technical support during trial for opening statements," and "provide technical support during trial." [Dkt. Entry 413-6], Ex. D at 6-8.

Mr. Malter is a member of the support staff of Mylan's counsel and like the activities discussed in the Honeywell case, his services are in the nature of attorneys fees. Whether viewed as attorney fees or expert fees, due to his technical expertise, the charges for Mr. Malter's activities are non-taxable. Based upon the foregoing case law, the Clerk denies this $48,978 cost.

Conversely, some the costs sought by Mylan are taxable as fees for the physical preparation of demonstratives. The last cost to be decided, the $4,900.17 cost to which Defendants do not object, Defs.' Br. at 2 n.1, includes the charges for the preparation of laminated

40" and 60" exhibits.   [Dkt. Entries 413-6, Ex. D].   After deducting the costs also included in The Evidence Store invoices for three weeks of easel rental ($75) and delivery, nontaxable under previously discussed case law, the Clerk taxes **$4,532.25** (3/18/14 invoice: $2,295.00 + .07% tax, or $2,455.65; 3/28/14 invoice: $1,940.75 + 7% tax, or $2,076.60).

Under § 1920 (4), fees for exemplification and the costs of making copies are taxed in the total amount of **$16,125.37** ($11,593.12 + $4,532.25 ).

### VI.   Summary

In conclusion, the Clerk grants the following costs and denies all other requested costs:

| | |
|---|---|
| § 1920 (1) fees of the Clerk: | $    350.00 |
| § 1920 (2) fees for transcripts: | $31,977.26 |
| § 1920 (3) witness fees: | $11,281.01 |
| § 1920 (4) fees for exemplification and copies: | $16,125.37 |
| **TOTAL:** | **$59,733.64** |

For the reasons set forth above, the motion of Plaintiffs Mylan Inc. and Mylan Pharmaceuticals Inc. to tax costs against Defendants GlaxoSmithKline LLC, SmithKline Beecham, Limited, and SmithKline Beecham (Cork) Limited is hereby **GRANTED IN PART AND DENIED IN PART.**   An appropriate order follows.

WILLIAM T. WALSH

By:   S/John T. O'Brien
Deputy Clerk

April 28, 2015